## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>KEVIN J. DEVEREAUX,<br><br>Defendant/Movant. | CR 13-113-GF-BMM<br>CV 16-108-GF-BMM<br><br><br>**ORDER DENYING § 2255<br>MOTION AND DENYING<br>CERTIFICATE<br>OF APPEALABILITY** |

This case comes before the Court on Defendant/Movant Devereaux's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Devereaux is a federal prisoner proceeding pro se.

On December 16, 2016, counsel for Devereaux was ordered to review his files and respond to one of the claims at issue. Counsel responded on January 12, 2017. Devereaux responded on February 6, 2017.

## I. Preliminary Review

The motion is subject to preliminary review before the United States is required to respond. The Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

1

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) (Schroeder, C.J., concurring) (regarding Rules Governing § 2254 Cases). But "it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Committee Note (1976), Rule 4, § 2254 Rules, *cited in* Committee Note (1976), Rule 4, § 2255 Rules.

## II. Background

A grand jury indicted Devereaux on December 5, 2013, on three counts of aggravated or attempted aggravated sexual abuse, violations of 18 U.S.C. § 2241(a)(1) (Counts 1, 2, and 3); one count of assault with intent to murder, a violation of 18 U.S.C. § 113(a)(1) (Count 4); one count of assault resulting in serious bodily injury, a violation of 18 U.S.C. § 113(a)(6) (Count 5); and one count of burglary, a violation of Mont. Code Ann. § 45-6-204(1)(a) (Count 6). Jurisdiction was predicated on the Major Crimes Act, 18 U.S.C. § 1153(a) and (b). Assistant Federal Defender R. Hank Branom was appointed to represent Devereaux.

All the alleged offenses were perpetrated against one victim, A.S. Count 1 occurred on or about May 10, 2009, Count 2 in the fall of 2009, Count 3 on October 1, 2013, and Counts 4, 5, and 6 on October 2, 2013.

Jury trial commenced on February 26, 2014. Devereaux testified in his own defense. Count 2 was dismissed by the Court on Devereaux's Rule 29 motion. Minutes (Doc. 50). The jury deliberated for about an hour. It found Devereaux guilty on Counts 1, 5, and 6 and acquitted him on Counts 3 and 4. Verdict (Doc. 56).

Sentencing was held on June 6, 2014. Devereaux's total adjusted offense level was 32. With a criminal history category of VI, his advisory guideline range was 210 to 262 months. Devereaux was sentenced to serve 240 months in prison, to be followed by five years' supervised release. Judgment (Doc. 66) at 2-3; Statement of Reasons (Doc. 67) at 1.

Devereaux appealed. He challenged the Court's questioning of a child witness in front of the jury at the outset of her testimony. The Ninth Circuit rejected his argument and affirmed his conviction. *See* Mem. (Doc. 80) at 3, *United States v. Devereaux*, No. 14-30112 (9th Cir. July 13, 2015) (unpublished mem. disp.). Devereaux petitioned for rehearing, but his petition was denied on December 1, 2015. His conviction became final when his time to file a petition for writ of *certiorari* expired, on February 9, 2016. *See Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012).

Devereaux timely filed his § 2255 motion on October 11, 2016. *See* 28 U.S.C. § 2255(f)(1).

### III. Claims and Analysis

Devereaux contends that counsel was ineffective in several respects. His claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Devereaux must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### A. Severance

Devereaux claims counsel should have sought to sever the 2009 counts from the 2013 counts. Am. Mem. in Supp. of § 2255 Mot. (Doc. 92) at 7-10. Another Indictment, filed October 3, 2013, alleged similar offenses occurring on December 13, 2012, against another victim, S.V. *See United States v. Devereaux*, No. CR 13-92-GF-BMM (D. Mont. filed Oct. 3, 2013). Trial was held on January 27 and 28, 2014. Devereaux was acquitted on Counts 2 and 3. The jury did not reach a verdict on Count 1.

On February 6, 2014, the United States moved to join Count 1 of No. CR 13-92-GF with trial of the six pending counts involving A.S. in this matter. Mot. for Joinder (Doc. 19). Devereaux opposed the joinder, and the United States's

motion was denied. Resp. (Doc. 24); Order (Doc. 36). Trial of Count 1 in No. CR 13-92-GF was reset for June 2, 2014. Order (13-92 Doc. 97). On January 20, 2015, based on the parties' agreement, the indictment was dismissed with prejudice. Mot. (13-92 Doc. 104); Order (13-92 Doc. 105).

Joinder is proper under Fed. R. Crim. P. 8(a) if, among other things, the alleged offenses are "of the same or similar character." "[T]he similar character of the joined offenses should be ascertainable—either readily apparent or reasonably inferred—from the face of the indictment." *United States v. Jawara*, 474 F.3d 565, 578 (9th Cir. 2007).

All counts of the Indictment alleged a persistent course of abusive conduct by Devereaux against one victim, A.S., in one location, Poplar, Montana. A.S.'s lack of consent constituted an element of Counts 1, 2, and 3 and was also related to Count 6's allegation of an un-permitted entry or remaining. Although the elements of assault and aggravated sexual abuse differ, all the Indictment's allegations in Counts 1 through 5 required the jury to assess whether Devereaux willingly used force to inflict bodily harm on A.S.

Count 3 alleged attempted aggravated sexual abuse on October 1, 2013. This alleged sexual abuse was temporally proximate to the assaults and burglary alleged to have occurred the following day on October 2, 2013, in Counts 4 through 6. Count 3 also alleged the same offense alleged in Count 2 in the fall of

2009.  Count 1 differed from Count 2 and Count 3 only in that they involved attempts and Count 1 alleged a completed offense.  Thus, Count 3 served as a bridge between Devereaux's sexual offenses against A.S. and his physical attack on her on October 2, 2013.

The Indictment did allege, in fact, offenses of sufficiently similar character to support joinder under Rule 8.  A motion to dismiss one or more counts for misjoinder was not likely to be granted.  Because joinder was proper, a motion to sever under Fed. R. Crim. P. 14 required Devereaux to show "manifest prejudice," that is, that he was deprived of a fair trial on one or more counts.  *See United States v. Doss*, 630 F.3d 1181, 1192 (9th Cir. 2011).  Nothing that occurred at trial met that high standard.

Devereaux undoubtedly would have had a better chance of acquittal if all the counts had been tried separately, but that is not the test.  The United States's ability to demonstrate a four-year course of conduct by Devereaux against A.S. did not suggest that Devereaux had a character problem.  It suggested that Devereaux had a problem with A.S. that he addressed through physical violence.  Moreover, the jury acquitted Devereaux on Counts 3 and 4.  These acquittals demonstrate that the jury compartmentalized the evidence and applied the Court's instructions regarding the elements of each offense and the burden of proof.  Given the propriety of joinder, any prejudice that Devereaux may have suffered did not amount to an

unfair trial in violation of due process.

Even assuming, solely for the sake of argument, that counsel did not consider issues of joinder or severance with respect to the indictment in this case, it is not reasonably probable that Devereaux would have obtained separate trials on Count 1 and/or Count 2 and Counts 3 through 6. The prejudice prong of the *Strickland* test is not met. This claim is denied.

## B. Pre-Indictment Delay

Devereaux claims counsel should have moved to dismiss Counts 1 and 2 for excessive pre-indictment delay. Am. Mem. at 10-12. A.S. testified at trial that, in 2009, she recanted the accusation she earlier had made against Devereaux because she was afraid of him. *See* 1 Trial Tr. at 57:13-60:2. In 2013, when the United States was presented with evidence of a severe beating administered to A.S. by Devereaux, it viewed differently evidence already in its possession.

The United States does not violate a defendant's rights when it declines to prosecute, as it did in 2009. Delaying prosecution while an investigation occurs also generally does not violate a defendant's right to due process. *See United States v. Lovasco*, 431 U.S. 783, 791-95 (1977). The nature of the relationship between Devereaux and A.S. drove the delay between May 2009 and filing of the charge in 2013.

The United States also pursued other investigations against Devereaux. *See*

*United States v. Devereaux*, No. CR 12-16-GF-SEH (D. Mont. filed Mar. 7, 2012)

(jury acquittal on charges of aggravated sexual abuse and abusive sexual contact);

*United States v. Devereaux*, No. CR 13-92-GF-BMM (D. Mont. filed Oct. 3, 2013)

(jury acquittal on charges of assault with dangerous weapon and burglary and

dismissal of charge of attempted aggravated sexual abuse).  No reason exists to

suppose that the United States allowed a completed investigation of a prosecutable

charge to languish without action.

In addition, to obtain dismissal for excessive pre-indictment delay, a

defendant must show "actual, non-speculative prejudice," *United States v.*

*Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989), that is, "loss of a witness and/or

evidence," *id.* at 1354.  Devereaux has failed to identify anything of that nature.

The record of the case likewise fails to demonstrate any loss of witnesses or

evidence.  Neither prong of the *Strickland* test is met.  This claim is denied.

### C.  Competency of S.B.

Devereaux claims counsel should have moved for an *in camera* competency

hearing for seven-year-old witness S.B., A.S.'s granddaughter, who witnessed the

assault on A.S. on October 2, 2013.  Am. Mem. at 12-14.  Devereaux suggests an

*in camera* hearing would have prevented the jury from hearing S.B.'s responses to

the Court's questions.

In fact, counsel requested an *in camera* hearing.  The Court decided to

question S.B. in the courtroom so the jury could assess for itself her ability to testify truthfully. *See* Mot. Hr'g Tr. (Doc. 72) at 47:21-49:17; 1 Trial Tr. at 6:11-7:9. As the Ninth Circuit found neither error nor prejudice, *see* Mem. at 2-3, *Devereaux*, No. 14-30112, no reason exists to suppose counsel performed deficiently or that Devereaux might have been acquitted had counsel done something differently. Neither prong of the *Strickland* test is met. This claim is denied.

### D. Impeachment of A.S.

#### 1. Pornographic Movie

Both in his statement to the FBI in 2009 and at trial, Devereaux claimed that he and A.S. had ordered a "triple X" movie through a pay-per-view service on the evening of May 10, 2009. A.S. testified, however, she did not have a pay-per-view service on that date and that her satellite dish did not work. 2 Trial Tr. (Doc. 74) at 135:5-13. Devereaux asserts that counsel should have impeached A.S. and corroborated his statement to the FBI by obtaining a document from DISH Network that would prove that such a movie was ordered at A.S.'s address that evening. Am. Mem. at 15-17.

Counsel was ordered to respond to this claim. *See* Order (Doc. 96). He states:

> 4. I have no specific recollection of Mr. Devereaux requesting that I subpoena Dish Network records.

5.      I have reviewed my notes of my meetings with Mr. Devereaux and
they do not contain any request by Mr. Devereaux to subpoena Dish
Network records.

6.      My trial strategy was to show the long standing consensual
relationship between Mr. Devereaux and A.S. as a defense to
Count I.

7.      To support the consent defense I relied on A.S.'s statement to
the FBI that she and Mr. Devereaux had consensual sex a week
before the alleged offense, the trial payment checks sent to Mr.
Devereaux at A.S.'s residence, (Exhibits 72-76), A.S.'s
affidavit in which she stated the sex was consensual (Exhibit
501) and A.S.'s letter to Mr. Devereaux in which she professed
her love for him and the desire to marry.

8.      Mr. Devereaux has a rough appearance and demeanor.  My trial
strategy was that the introduction of evidence regarding a
pornographic movie would not enhance Mr. Devereaux's
standing with the jury.

Counsel Aff. (Doc. 98) at 2.[1]

Devereaux asserts that he needs an evidentiary hearing because counsel

claims not to recall Devereaux's request to subpoena Dish Network records.

Devereaux further questions counsel's belief that it would have been better not to

emphasize the matter of the pornographic movie.  Devereaux asks, "How could

counsel strategize about something he was purportedly unaware of?"  Devereaux

Resp. (Doc. 99) at 2.

---

[1]      Counsel also noted that, in the course of responding to the order, he discovered a photo
of A.S.'s house showing the satellite dish near the edge of the photo.  At trial, the United States
introduced the same photo but with the satellite dish cropped out.  A.S. did not deny she had a
satellite dish.  She said it was not working.  The discrepancy is not significant.

To obtain a hearing, Devereaux is "required to allege specific facts which, if true, would entitle him to relief." *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (quoting *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)). He does not meet that standard. First, counsel did not say he was unaware of the pornographic movie. Counsel claims that he does not recall a specific request from Devereaux to subpoena a record from Dish Network. Moreover, counsel was not obliged to fulfill such a request even if it was made. The *Strickland* question is whether counsel considered pursuing a potential line of impeachment and, if so, whether he reasonably decided not to pursue it.

Counsel plainly considered Devereaux's statement about the pornographic movie. Using his professional judgment about his client's appearance before the jury, he chose not to emphasize it. His judgment was reasonable; he had other useful impeachment evidence in the form of A.S.'s own words, and that evidence could be presented without requiring counsel to refer to an event that might bring some jurors to view Devereaux less favorably.

Even assuming, for the sake of argument, that Devereaux could show prejudice, the first prong of the *Strickland* test is not met. Counsel's decision was reasonable. This claim is denied.

### 2. Margaret Henry

Devereaux claims counsel should have called victim advocate Margaret

Henry to testify that A.S. told her she would not testify and would not allow her granddaughter to testify.  Am. Mem. at 27.  A victim's reluctance to testify is as likely to indicate fear of the defendant or apprehension at telling a room full of strangers about a sexual encounter as it is to indicate "second thoughts," Am. Mem. at 27, about the veracity of her testimony.  A.S.'s purported statement to Henry would likely have been inadmissible hearsay because it does not truly impeach anything.  A competent defense counsel might have concluded that Henry's testimony could do more harm than good.

At any rate, the jury knew of the equivocal nature of A.S.'s conduct.  She not only recanted her accusation in 2009 and then reinstated it, but she wrote love letters to Devereaux, despite his repeated attempts to break in to her house.  She even handed one to him through a gap in a window that had been boarded up and nailed shut to stop him from breaking in to her house.  *See* 1 Trial Tr. at 68:2-70:25.

Neither prong of the *Strickland* test is met.  This claim is denied.

### E.  "Impeachment" of Officer Cameron

Devereaux claims counsel should have drawn the jury's attention to "inconsistencies" in A.S.'s excited utterances to Officer Cameron and used them to impeach Cameron's investigation.  Am. Mem. at 17-19.

Devereaux perceives inconsistency where most people would not.  A rape-

kit examination can verify a victim's statement that sexual activity occurred and that she can identify the perpetrator. It also may identify injury that requires treatment. It is not "inconsistent" for a victim to identify the perpetrator to a police officer and "nonetheless ask[] for a rape kit," Am. Mem. at 19; 1 Trial Tr. at 26:19-27:5. Officer Cameron had no reason to think A.S. was "confused" when she asked for a rape kit. Am. Mem. at 19. No impeachment opportunity was missed here. Moreover, counsel established that neither Cameron nor anyone else attempted to match the bite mark to Devereaux. *See* 1 Trial Tr. at 147:14-18. Because the prosecution has the burden of proving the charge beyond reasonable doubt, absence of evidence favors the defense, not the prosecution.

Neither prong of the *Strickland* test is met. This claim is denied.

### F.  Impeachment of A.B.

Devereaux avers that if he had raped A.S. as violently as she said, A.B. would have been able to hear the attack. He argues that counsel should have emphasized this point. Am. Mem. at 19-21. The jury heard testimony that the house was small. A.B. testified, however, that she was awakened by A.S. coming into her room to tell her of the attack. Neither prong of the *Strickland* test is met. This claim is denied.

### G.  Preparing Devereaux to Testify

Devereaux claims counsel did not consult with him enough to allow him to

make a reasonable decision about testifying. He also claims counsel did not prepare him to testify. Am. Mem. at 21-23.

Devereaux testified at trial in Cause No. CR 13-92-GF-BMM. He was acquitted on two counts and the jury was unable to reach a verdict on the other. The charge was eventually dismissed. He also testified at trial in Cause No. CR 12-16-GF-SEH. He was acquitted on all counts. The Federal Defenders of Montana represented him in both of those cases, as they did in this one.

In this case, Devereaux does not allege he would have chosen not to testify if he had been adequately advised. Given his previous successes, it seems unlikely he would have remained silent. Moreover, Devereaux does not identify anything that was "inadequate" in the "development of evidence" as a result of his unpreparedness, much less something that would have been cured or prevented with adequate preparation. He does not suggest how counsel could have made his testimony more credible with better preparation.

Neither prong of the *Strickland* test is met. This claim is denied.

**H. Uncalled Witnesses**

Devereaux claims counsel should have called Bruce Nordwick, Devereaux's sister Grace, and, presumably, Eugene Longee, who purportedly submitted an affidavit averring that A.S. previously falsely accused him of rape. *See* Longee Aff. (Doc. 94) at 2.

Nordwick would have testified that he picked up Devereaux at A.S.'s house on several occasions and that Devereaux frequently borrowed his lawn mower to mow A.S.'s lawn. Devereaux claims that this testimony would have undermined A.S.'s testimony that Devereaux was not welcome at her house. Am. Mem. at 24-25. The jury heard evidence of Devereaux's repeated break-ins to A.S.'s house. Nordwick's testimony would have provided only slightly contradictory evidence. It is not unreasonable to fail to present the complicated relationship between Devereaux and A.S. through Nordwick's testimony. Neither prong of the *Strickland* test is met. This claim is denied.

Grace Devereaux would have testified that Devereaux was in jail in Great Falls for the entire month of October 2009. Am. Mem. at 25-27; G. Devereaux Aff. at 1 ¶ 6 (Doc. 94 at 3). Even if this were true, *see, e.g.*, Presentence Report ¶¶ 66, 70, Count 2 was the offense alleged to have occurred in the fall of 2009, not just in October. The Court also dismissed this count before the case went to the jury. As for any impeachment value Grace's testimony might have had, A.S. testified she was not sure of the date. Neither prong of the *Strickland* test is met. This claim is denied.

Unlike his specific allegations with respect to Nordwick and Grace, *see* Am. Mem. at 25 para. 5, 26 para. 3, Devereaux does not claim that he told counsel about Longee before trial. At any rate, the Eighth Circuit has decided several cases on

15

the issue and has concluded that a prior report of rape, followed by dismissal of charges, has "very little probative value."  *See, e.g.*, *United States v. Frederick*, 683 F.3d 913, 915-20 (8th Cir. 2014) (discussing cases).

This reasoning would have applied here where several factors buttressed A.S.'s credibility.  A.S. admitted to police that she had consensual intercourse with Devereaux a week before May 10, 2009.  *See, e.g.*, 2 Trial Tr. at 98:4-7.  Devereaux claimed that the two had consensual sex.  The jury heard A.S.'s 911 call.  The jury also heard a recorded jail phone call between A.S. and Devereaux.  A.S. accused Devereaux in the jail call of beating her up and putting her in the hospital.  Devereaux changed the subject.  *See* 2 Trial Tr. at 82:2-83:9, 100:12-16, 102:17-103:15.

A police officer and a nurse saw and photographed the bite mark and also witnessed A.S.'s behavior and statements very shortly after the incident.  *See* 1 Trial Tr. at 26:3-27:23; 2 Trial Tr. at 13:20-15:24, 16:11-17:16.  Other witnesses testified that Devereaux repeatedly tried, over the next few years, to break in to A.S.'s house.  This evidence corroborated A.S.'s testimony that Devereaux did not take no for an answer.  *See* 2 Trial Tr. at 46:20-48:16 (Devereaux told officer, who stopped him from removing a window screen at 3:00 a.m., "She wants me here."); *id.* at 51:4-55:15 (three additional attempted break-ins); *id.* at 59:9-61:22 (one more); *id.* at 86:4-10 (photographs of window nailed shut, screen with hole torn in

it, broken glass on the ground).

No reason exists to believe that counsel's performance was unreasonable. Longee's testimony likely would have been excluded, *see* Fed. R. Evid. 608(b)(1), 412(a),[2] and most lawyers would spend their time on more promising issues. Due to the low probative value of the evidence under the circumstances of this case, no reasonable probability exists that Devereaux would have been acquitted even if Longee had testified. Neither prong of the *Strickland* test is met. This claim is denied.

### I.  Discovery and Discrediting of Family Members' Statements

Devereaux claims counsel failed to deliver discovery to him in a timely way. Further, given timely discovery, Devereaux says he might have advised counsel about S.B.'s ability to testify and about discrediting the testimony of A.S.'s family members. Am. Mem. at 30-31.

The government produced late the discovery that Devereaux identifies as having been provided by his counsel. *See* Am. Mem. at 28-29. Counsel cannot share discovery before he receives it. As mentioned previously, no reason exists to question S.B.'s competence to testify. Devereaux points to interviews of D.B. (apparently a juvenile at the time) and Sheila Black Wolf regarding the May 2009 incident. Both interviewees reported they were not at A.S.'s home when

---

[2]  Rule 412 would not apply if Longee testified that A.S. accused him of rape when the two did not engage in sexual acts at all. But such testimony would also make Longee's report even less probative of A.S.'s accusation against Devereaux.

Devereaux assaulted her on May 10, 2009. *See* FBI 302 Reports (Doc. 92-1) at 1-2. It appears that they had no personal knowledge either of what occurred or of who was present at the time. No need existed to "discredit" them. The government did not call these witnesses at trial due to their lack of personal knowledge. *See* Fed. R. Evid. 602. Finally, as Devereaux says, Angel Buck Elk testified that no one was home except her daughter, who is S.B., and A.S. No one has suggested anyone else was present in the house on October 2, 2013.

None of these allegations meet either prong of the *Strickland* test. No reason exists to infer either that counsel's performance was deficient or that Devereaux's claims of prejudice are valid. This claim is denied.

### J. Cumulative Prejudice

Devereaux claims prejudice from all instances of counsel's deficient performance should be viewed cumulatively. Am. Mem. at 31-32. As counsel's performance was not deficient, there is no need to consider this claim. It is denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Devereaux's claims meets even the relatively low threshold required for a COA. Joinder was proper and severance was unlikely to be granted. Any pre-indictment delay was due to the nature of the relationship between Devereaux and A.S., not to the United States' conduct. Contrary to Devereaux's claim, counsel did ask, in fact, that S.B.'s competency be assessed in an *in camera* hearing. The fact that the Court denied counsel's request is not a sign of ineffective assistance. The Ninth Circuit affirmed that it was proper to determine S.B.'s competency before the jury.

Devereaux's claims regarding counsel's missed impeachment opportunities are similarly insubstantial. Counsel was aware of the point regarding the pornographic movie and made a reasonable decision not to emphasize it. A.S.'s statements to the victim advocate likely would have been inadmissible. Even if they were admissible, any reasonable attorney probably would have thought they could do more harm than good, and other evidence more forcefully demonstrated the ambiguity of A.S.'s statements and conduct. Officer Cameron's failure to investigate Devereaux's teeth did not support impeachment, and, at any rate,

counsel demonstrated that no one attempted to match Devereaux's bite to the mark on A.S.'s arm.  The jury knew A.B. did not hear an allegedly violent assault that took place in the small house where she had been sleeping.  Counsel's failure to point out these specific facts was not objectively unreasonable.  No reasonable probability exists that the verdict would have been different had he done so.

Devereaux testified in two previous trials.  Each alleged multiple charges against him, and neither resulted in conviction on any count.  Thus, his claim that counsel did not adequately prepare him to testify rings hollow.  He does not claim that he might have chosen not to testify, and he does not identify anything that he omitted or should not have said.  Devereaux also claims counsel should have called three additional witnesses.  All three would have been of marginal utility at best, and the third likely could not have testified at all.

Devereaux claims that certain discovery was produced late.  Late disclosure of discovery by the United States does not make defense counsel's performance unreasonable, and there is no reason to suppose Devereaux was prejudiced.

Finally, Devereaux's claim of cumulative prejudice lacks merit as he does not identify any respect in which counsel performed unreasonably.

Reasonable jurists would see no basis to disagree or to encourage further proceedings.  A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED:

1. Devereaux's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 89) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Devereaux files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 16-108-GF-BMM are terminated and shall close the civil file by entering judgment in favor of the United States and against Devereaux.

DATED this 12th day of October, 2017.

Brian Morris
United States District Court Judge